[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14551

_____

D.C. Docket No. 8:13-cv-02723-JSM-TGW

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff Appellee-
Cross Appellant,

versus

ST. JOSEPH'S HOSPITAL, INC.,

Defendant Appellant-
Cross Appellee.

_____

Appeals from the United States District Court
from the Middle District of Florida

_____

(December 7, 2016)

Before ED CARNES, Chief Judge,  DUBINA, Circuit Judge, and HUCK,[*] District Judge.

HUCK, District Judge:

The Americans with Disabilities Act's provision for reasonable accommodation of disabled workers is at the heart of this case. Leokadia Bryk, a disabled nurse, sought a reasonable accommodation in the form of a job reassignment to another unit at St. Joseph's Hospital because she required the use of a cane, which posed a safety hazard in the psychiatric ward where she worked. She was given the opportunity to apply for other jobs at St. Joseph's Hospital, but was required to compete for them. When Bryk did not obtain another Hospital position, the Hospital terminated her employment and the Equal Employment Opportunity Commission brought suit on her behalf.

Both sides have appealed the various rulings of the district court. Notably, the EEOC appeals the district court's finding that the ADA did not require job reassignment without competition as a reasonable accommodation. The framework of *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), informs the Court's decision affirming the district court on this point. This Court also

---

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida,  sitting by designation.

2

agrees with the district court's summary judgment rulings finding the employee was a "disabled qualified individual" under the ADA and that the Hospital's 30-day allowance to apply for alternate jobs was reasonable as a matter of law.

This Court, however, disagrees with the district court's order granting in part the EEOC's Federal Rule of Civil Procedure 59(e) motion for alteration of the judgment. Except in rare circumstances not present here, motions under Rule 59(e) may not be used to raise new legal theories or arguments, much less in this case where the movant under Rule 59(e), the EEOC, was seeking to contravene language in the jury instructions and verdict form that the EEOC had previously proposed.[1] The EEOC failed to meet the Rule 59(e) standard and the district court erred in altering the judgment.

## I. Factual Background

Leokadia Bryk was employed as a nurse in the psychiatric ward of St. Joseph's Hospital from January 2, 1990, until her termination on November 21, 2011. St. Joseph's Hospital is a member of BayCare Health Systems, an alliance of hospitals, medical centers, and home health care providers. From October 17

---

[1] Both parties submitted an identical question in their proposed verdict forms asking the jury to determine whether "the Hospital made good faith efforts to identify and make a reasonable accommodation for Ms. Bryk." The parties' proposed verdict forms both included an instruction to the jury that "if your answer is 'yes,' [that the Hospital made good faith efforts] this ends your deliberations."

3

until November 21, 2011, Bryk was working as a Clinical Nurse II, which was a demotion from her prior position as a Charge Nurse. The Hospital demoted Bryk because she failed to follow Hospital procedures in the psychiatric ward. Rather than terminate Bryk for violating procedures, the Hospital demoted her and placed a final written warning in her file on October 17, 2011. Bryk's demotion is not at issue in this appeal.

In 2002, Bryk began experiencing back pain. An MRI revealed that a disc was narrowing her spinal canal and pressing on her nerve roots, a condition known as spinal stenosis. She also developed arthritis and underwent hip replacement in 2009. Bryk began to use a cane to alleviate her back pain and to provide support. Without the cane, Bryk, a 62-year old obese woman, could only walk short distances and would need to stop to realign her body. Starting in 2009, Bryk began using a cane in the psychiatric ward. At the time, she was a Charge Nurse and spent some time working at a desk. During the course of the disciplinary action in October 2011, Susan Wright, Director of Behavioral Health Operations, observed Bryk using a cane in the psychiatric ward. Wright was concerned the patients could use the cane as a weapon. When Wright raised the

4

concern, Bryk for the first time provided a doctor's note recommending use of the cane in the psychiatric ward.

###### A.    Application Process

On October 21, 2011, shortly after her demotion, the Hospital advised Bryk that she could no longer use the cane in the psychiatric ward as it posed a safety risk. Krista Sikes, Manager of Team Resources, spoke to Bryk and offered her the opportunity to remain employed with the Hospital. The Hospital allowed Bryk 30 days to identify and apply for other positions. Normally, the Hospital did not permit internal candidates to apply for a transfer, unless they had been in their current position for at least six months and had no final written warnings in their record. Bryk met neither criteria.  However, the Hospital waived the  requirements. The Hospital allowed Bryk to compete with other internal applicants, as opposed to being in the general pool of job applicants.  Although the Hospital authorized Bryk to apply through internal channels as an  active  employee, all of Bryk's job applications were as an external applicant.

Team Resources Director Pat Teeuwan told Bryk, "it wasn't their job to get a job for [her]." However, Krista Sikes was available to answer questions and guide Bryk through the process, but she was not charged with reassigning Bryk to

5

another position.    Bryk advised Sikes that she was going on vacation for two weeks at the start of the 30-day period and that she would not look at the Hospital's job board until her return.    Bryk never came to Sikes with questions about the application process, the website, or the particular details of any position. Bryk did not apply for another position until November 11, 2011 — three weeks into her 30-day allowance. The Hospital job board listed over 700 jobs available.  Bryk applied for seven positions, three of which she applied for on the last day of the 30-day period and one of which she applied for after her 30-day application period had expired. At summary judgment, the EEOC focused on three of those seven positions as being positions for which Bryk was qualified.

Bryk testified that she was limited to certain positions because she had worked only in psychiatric and chemical dependency units during her 21 years with the Hospital. Bryk stated she could not safely work in medical or surgical units. She was not familiar with newer nursing procedures, she had no skills in placing intravenous lines on patients, and she would not be able to work with a cane in fast-paced units. As a nurse in the psychiatric ward, Bryk did not treat patients with medical surgical issues. Patients were admitted to the psychiatric ward only if they had medical clearance. If a psychiatric patient developed a

6

medical condition or needed an intravenous line, the Hospital transferred the patient to the medical surgery unit.

At trial, the parties focused on three positions for which Bryk applied during the 30-day period: Educational Specialist, Care Transition Coordinator, and Home Health Clinician. The Hospital did not interview Bryk for any of these positions.

1.    *Educational Specialist*

An Educational Specialist is responsible for monthly orientation of new hires at one of BayCare's locations, as well as training nurses on new equipment, electronic medical records, and regulations. The job also entails chart reviews and on-the-spot training for nurses or other employees with identified deficiencies. This job vacancy was for one of the two educators on staff at South Florida Baptist, a small community hospital. Each educator had to be qualified to train nurses in every unit, including the Emergency Department, a Surgical Department, a medical floor, an Intensive Care Unit, a Step-Down Unit, and an OB/GYN Floor. The Hospital considered this position to be a promotion for Bryk. The EEOC, however, presented evidence at trial that Bryk earned more in her then-current job as a Clinical Nurse ($36.44/hour) than the minimum salary for an Educational Specialist ($27.95/hour).

7

Two people were involved in hiring for the position, Pamela Wayne, the hiring manager, and Rose-Mary Myers, a recruiter. On November 21, 2011, Myers called Wayne and told her that Bryk had applied to become an Educational Specialist. Due to the requirement that the Educational Specialist be qualified to train employees in a myriad of units, Wayne determined that Bryk would not be a "good fit for the job" and decided not to interview her. Although Bryk met the requirements on the job post, Wayne thought the applicant would need at least one or two years of "medical surgical experience" and "more education experience, as well." On December 27, 2011, the Hospital formally rejected Bryk's application on its system.

On February 16, 2012, the Hospital hired Brenda Carlson for the position. A current employee of the Hospital, Carlson had a background in OB/GYN, which requires a foundation in surgery and general medicine. While working as a nurse, Carlson also held a second job for a few years teaching public high school students studying to become certified in health related fields. These students were enrolled in a "health academy," a program which Carlson created and developed.

### 2.    *Home Health Clinician*

A Home Health Clinician cares for patients in their homes following their discharge from the hospital. More specifically, a Home Health Clinician plans a

8

patient's hospital discharge, oversees the patient's care at home, determines the plan of care with the physician, and performs surgical wound care and infusions. At the time Bryk submitted her application, the Hospital had already hired Virginia Surrency. Nobody from the Hospital explained to Bryk that the position was filled and Bryk testified that when she applied there were three positions for Home Health Clinicians advertised on the Hospital's job board. The EEOC contends that the Hospital should have moved Surrency into one of the identical vacancies, creating space for Bryk.

Even if the position were vacant, the Hospital opines that Bryk was not the best-qualified candidate. Her résumé showed some home health experience, but only in the narrow field of psychiatry and she lacked wound care experience. Bryk admitted that when she worked as a home health aide, she did not perform surgical wound care for her patients.

### 3.    *Care Transition Coordinator*

A Care Transition Coordinator goes to hospitals, gathers information from a patient's chart, and then coordinates post-hospital home care. The Coordinator communicates with the home care agency and the pharmacy, sets up the patient's first visit with the Home Health Clinician, and explains what services will be provided. The Care Transition Coordinator does not treat the patient. The position

9

requires marketing to physician offices and regular travel.

The hiring manager was unaware of Bryk's application for this job, and the Hospital says this position was not available and posted in error. The Hospital canceled this posting in May 2012. The Hospital additionally contends that Bryk was not sufficiently qualified because she lacked experience in surgery and acute treatment.

## B.    The Employment Termination

Following the expiration of her 30-day application period, the Hospital terminated Bryk on November 21, 2011. She continued to have access to the Hospital's job board, but she only applied for one additional position on December 17, 2011. Had Bryk been further along in the interview process at the 30-day mark, the Hospital would have extended her employment to allow time for the interviewing process.

## C.    The District Court Proceedings

On October 23, 2013, the Equal Employment Opportunity Commission filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* Specifically, the EEOC alleges that St. Joseph's Hospital violated 42 U.S.C. §§ 12112(a) and (b)(5)(a) when it failed to provide the Charging Party, Bryk, with a reasonable accommodation by not allowing her to use a cane while working in a

10

psychiatric unit. The EEOC also claims that the Hospital violated the ADA by not reassigning Bryk to a vacant position without requiring her to compete with other applicants for those jobs.

### 1.    *Summary Judgment*

The parties filed cross-motions for summary judgment and the district court granted both motions in part. The district court found that Bryk's gait dysfunction sufficiently established a disability under the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).

The district court found that the Hospital was reasonable in not allowing Bryk to use her cane in the psychiatric ward. However, on the reasonable accommodation issue, the district court found there was a genuine issue of material fact as to whether Bryk was entitled to reassignment to either the Educational Specialist or the Care Transition Coordinator position. The parties did not discuss and the district court did not rule on the Home Health Clinician position on summary judgment. However, at trial, the district court allowed evidence relating to the Home Health Clinician position. The Court also allowed evidence about the vacant, identical Home Health Clinician positions for which Bryk did not apply.

The EEOC moved for clarification of the summary judgment order and the

11

district court held that the Hospital did not have the obligation to reassign Bryk to a vacant position without competition. It wrote: "The Court does not hold that the Hospital had an obligation to reassign Leokadia Bryk to the vacant positions for which she qualified without competition as a matter of law." (R-126 at 1). Requiring competition is "one factor, out of many, that the jury may consider regarding the reasonableness of the accommodation." (R-126 at 1).

In its clarification order, the district court also ruled that the 30-day period the Hospital gave Bryk to "identify a vacant position for which she is qualified is reasonable as a matter of law." (R-126 at 1). The EEOC moved the district court to reconsider this ruling arguing that a jury could reasonably find it unreasonable to expect Bryk to complete the application process and secure a position in 30 days. The district court denied the motion for reconsideration and at trial instructed the jury: "Although the Court has made no determination about whether Ms. Bryk was provided a reasonable accommodation, the Court has determined as a matter of law that the amount of time — 30 days — provided to Ms. Bryk was a reasonable time." (R-180 Vol. III at 140).

### 2. *Jury Instructions and Verdict*

The district court instructed the jury, in accordance with the verdict form, to first determine whether the Hospital had failed to provide a reasonable

12

accommodation by not assigning Bryk to the Educational Specialist, Care Transition Coordinator, or Home Health Clinician positions, (2) if yes, whether the Hospital established its affirmative defense that it made good faith efforts at reasonable accommodation, (3) if no, whether the Hospital established its affirmative defense that the proposed accommodation would have constituted an undue hardship, and (4) if no, the amount of damages that should be awarded.[2] Notably, both the EEOC's and the Hospital's proposed verdict forms required the jury to cease deliberations upon a finding that the Hospital made good faith efforts to reasonably accommodate Bryk. The district court accepted the parties' proposed language on this question.

The jury answered the first question "yes", finding that the Hospital failed to provide a reasonable accommodation. The jury then answered the second question "yes", finding the Hospital made good faith efforts to identify and make

---

[2] The jury instructions on good faith and undue hardship defenses read almost identically. *Compare*:

"If you find by a preponderance of the evidence that the Hospital made good faith effort to identify and make a reasonable accommodation for Ms. Bryk, then you have found that the Hospital established its affirmative defense, and you will not decide the issue of Ms. Bryk's damages. But if you find that the Hospital has not established its affirmative defense, you must decide the damages issue." (R-180 at 144).

"If you find by a preponderance of the evidence that the accommodation Ms. Bryk requested would have imposed an undue hardship on the operation of the Hospital's business, then you have found that the Hospital established this affirmative defense and you will not decide the issue of Ms. Bryk's damages. But if you find the Hospital has not established its affirmative defense, you must decide the damages issue." (R-180 at 145).

13

a reasonable accommodation for Bryk. The jury then ceased deliberations in accordance with the verdict form, which stated that if the answer to the second question is "yes", "this ends [the jury's] deliberations." Neither party requested the district court to instruct the jury to render a verdict on the undue burden defense, in addition to its finding of good faith. Thus, the jury did not reach a decision on whether the Hospital established its affirmative defense that the proposed accommodation constituted an undue hardship, and the jury did not award damages. Following the verdict, the district court entered judgment in favor of the Hospital.

### 3.    *Post-trial Rulings*

#### a.  *Good Faith Defense*

After judgment was entered in the Hospital's favor, the EEOC filed a Rule 59(e) motion for alteration of the judgment and a renewed motion for judgment as a matter of law. The EEOC requested that the district court vacate the good faith finding, find the Hospital liable, and remand for a trial on damages. Citing 42 U.S.C. § 1981a(a)(3), the EEOC argued the jury's good faith finding applied only as a defense to compensatory and punitive damages, not as a defense to liability.

Not surprisingly, the Hospital responded that the jury correctly found, and the evidence supported the finding, that the Hospital acted in good faith absolving

14

it from all ADA liability. Making an evidentiary argument, the Hospital asserts that it acted in good faith by waiving the standard transfer requirements, making Sikes available to assist Bryk, and giving Bryk 30 days to apply for a new job.

Opposing the EEOC's assertion that the statutory good faith defense applied only to jury awarded damages, the Hospital also argued that legally, good faith is a complete defense to ADA liability. In addition, the Hospital claimed that the EEOC waived its position by not objecting to the instruction that a finding of good faith ended deliberations.

The district court denied the EEOC's renewed motion for judgment as a matter of law and granted in part the EEOC's motion to alter the judgment. It held that good faith was a defense only to jury awarded damages, not liability.

### b. *Equitable Remedies*

After altering the judgment in the EEOC's favor and holding the good faith defense applicable only to damages, the district court evaluated the EEOC's request for equitable relief. The district court denied the EEOC's request for an injunction barring the Hospital's policy of competitive job reassignment when accommodating disabled workers. The district court also denied back and front pay, specifically finding "that Bryk did not make a good faith effort to secure a position during the 30-day period, nor did she otherwise fully engage in the

15

interactive process." (R-197 at 15). To support this finding the district court wrote that "the evidence at trial showed that Bryk knew she had 30 days to secure a position but delayed her job search for two weeks to go on vacation. . . . In the face of impending termination from a position she held for over twenty years, she acted unreasonably." (R-197 at 15).

The district court then concluded that Bryk was entitled to reinstatement. However, it did not order reinstatement outright. The district court ordered the parties to mediate to determine the specific parameters for Bryk's application for reinstatement. After one month, the mediator notified the district court that the parties reached an impasse. On August 11, 2014, Bryk obtained full-time work as a telephonic behavioral health nurse in a satellite of the MacDill Air Force Base. The Hospital posits that because Bryk acknowledged that she "enjoys" her current job and has not "looked for work since" she started there that she no longer wants to work at the Hospital. (R-178 at 130-31).

## II. Legal Standards

The standard of review for a summary judgment on an Americans with Disabilities Act case is *de novo*, drawing all reasonable inferences in favor of the non-moving party. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

16

When the Court reviews a jury verdict, the Court also reviews the sufficiency of the evidence *de novo*. The court must view "the evidence in the light most favorable to the [prevailing party] and [draw] all reasonable inferences and credibility choices in favor of the jury's verdict." *U.S. v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). The relevant question is whether "any rational trier of fact" could have ruled in favor of the prevailing party. *Id.* "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Christopher v. Florida*, 449 F.3d 1360, 1373 (11th Cir. 2006) (quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944)). The Court also reviews *de novo* the district court's decision on a motion for judgment as a matter of law. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998).

A decision to alter or amend a judgment is reviewed for abuse of discretion, unless the ruling turns on a question of law. If that is the case, this Court reviews the question of law *de novo*. *Barnes v. Broward Cty. Sheriff's Office*, 190 F.3d 1274, 1276–77 (11th Cir. 1999). The district court's construction of a statute, such as the ADA, is likewise reviewed *de novo*. *See Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1343 (11th Cir. 2008). The

17

Court reviews the district court's determination regarding equitable remedies for abuse of discretion. *Id.*

### III. <u>Legal Analysis</u>

The cross-appeals stem from the various district court rulings, including the summary judgment order, the order clarifying summary judgment, the order denying motion for judgment as a matter of law, and the post-judgment order altering the judgment. A threshold issue is whether Bryk is a "disabled qualified individual" under the ADA. Another main issue is whether the Hospital acted reasonably in giving Bryk the opportunity to compete for vacant jobs within a 30-day period. Finally, the parties dispute on appeal whether the district court properly granted in part the Rule 59(e) motion to alter the judgment.

A.    <u>Did the district court err in its summary judgment rulings?</u>

1. *Was Bryk disabled under the ADA?*

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of disability" in any of the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Establishing a *prima facie* case under the ADA requires a plaintiff to show that, at the time of the adverse employment action, she had a disability, she was a qualified individual, and she

18

was subjected to unlawful discrimination because of her disability. *Holly*, 492 F.3d at 1255–56.

Congress made significant changes to the ADA by enacting the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. These amendments convey that an extensive analysis is not required to determine whether an individual's impairment is a disability under the ADA. *Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). "Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of an individual;" "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to "sleeping, walking, standing, lifting, . . . [and] bending." *Id.* at §12102(2)(A); *Mazzeo*, 746 F.3d at 1268.

The district court concluded that Bryk's "'gait dysfunction' identified by Dr. Bhat is sufficient to establish that Bryk was a disabled person at the time of her termination." (R-121 at 9). The evidence shows that Bryk was substantially limited in her ability to walk. She had spinal stenosis and had undergone hip replacement in 2009.  Bryk depended on the cane to alleviate back pain and to

19

provide support for her hip. Without the cane, she could only walk short distances and would have to stop, align her body, and balance herself.

The Hospital argues that Bryk's pain, without more, is insufficient to establish an ADA disability. Bryk suffered pain and more. Her spinal stenosis and hip replacement impaired her ability to walk — without question a major life activity under the ADA. The evidence showed that without her cane, Bryk would limp and could only walk short distances. She suffered from gait dysfunction. Given that this threshold issue should not require extensive analysis, the Court affirms the district court's decision finding that Bryk was disabled as a matter of law and that the first element of the *prima facie* case was met.

2. *Was Bryk a qualified individual under the ADA?*

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The trial court found on summary judgment that the essential function of Bryk's position in the psychiatric ward required her to keep patients safe and that "no reasonable juror could find that Bryk could use her cane safely" in the psychiatric ward because a patient could use the cane as a weapon. The Hospital argues that

20

based on this finding, the trial court should have granted summary judgment finding that Bryk was not a qualified individual under the ADA because she was not qualified to work in the psychiatric ward. Put another way, the Hospital argues that Bryk could not work in the psychiatric ward without a cane, and there was no way a cane would ever be safe in the psychiatric ward, so Bryk was not a qualified individual able to perform the essential functions of the employment position.

The district court, however, allowed the case to proceed — finding that Bryk was a qualified individual with respect to the prospective jobs for which she had applied. This ruling is consistent with the EEOC's position that Bryk's ability to perform her then-current job in the psychiatric ward is irrelevant, because she sought reassignment. When an employee seeks reassignment as a reasonable accommodation for a disability, the relevant question when deciding whether she is a qualified individual is not whether the employee is qualified for her current position, but whether she is qualified for the new job. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001) (examining the essential functions of the new position, not the old one, to determine whether the employee was qualified within the meaning of the statute). The express language of the statute supports the district court's conclusion and not the Hospital's position. To

21

quote the statute, the relevant position is the one that the individual "holds or *desires.*" 42 U.S.C. § 12111(8). Accordingly, the Court affirms the district court's finding at summary judgment that Bryk was a "disabled qualified individual" under the ADA.

### 3.  *Does the ADA mandate noncompetitive reassignment?*

At issue in this appeal is the district court's holding as a matter of law that the ADA does not mandate reassignment without competition. The district court wrote that whether a disabled employee "had to compete with others for the vacant position is one factor, out of many, that the jury may consider regarding the reasonableness of the accommodation."[4] (R-126 at 1). The EEOC appeals, arguing that the ADA mandates noncompetitive reassignment and that had the jury been so instructed, it would not have found that the Hospital acted in good faith.

We agree that the ADA does not require reassignment without competition for, or preferential treatment of, the disabled. The ADA provides that, subject to exceptions irrelevant here, an employer must reasonably accommodate a disabled employee.  42 U.S.C. § 12112(a), (b)(5)(A).  But it does not say how an employer

---

[4] The district court issued this holding in its order granting the EEOC's motion for clarification, and the district court's instructions to the jury were consistent with this holding.

22

must do that. It offers a non-exhaustive list of accommodations that "may" be reasonable, and one item on the list is "reassignment to a vacant position." *See id.* § 12111(9)(B) ("The term 'reasonable accommodation' *may include . . .* reassignment to vacant position.") (emphasis added). The ADA does not say or imply that reassignment is always reasonable. To the contrary, the use of the word "may" implies just the opposite: that reassignment will be reasonable in some circumstances but not in others.[5] *See May*, Merriam-Webster.com, *available at* www.merriam-webster.com/dictionary/may (last visited Oct. 28, 2016) ('may" often means "might" or "can"); *see also Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1442 (11th Cir. 1997) (contrasting "may" and "shall").

Apart from the ADA's statutory construction, this Court's well-settled ADA precedent holds that "employers are only required to provide 'alternative employment opportunities reasonably available under the employer's existing policies.'" *Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998) (quoting *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 289 n.19 (1987)); *Frazier-White v. Gee*,

---

[5] Had Congress understood the ADA to mandate reassignment, it could easily have used mandatory language. That it did not do so at least suggests that it did not intend reassignment to be required in all circumstances. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003) (same analysis in Title VII case). That is particularly true since Congress had no difficulty using mandatory language in other parts of the statute. *See, e.g.*, 42 U.S.C. § 12112(a), (c)(2)(A), (d)(4)(A).

23

818 F.3d 1249, 1257 (11th Cir. 2016) ("ADA does not require [employers] to reassign [disabled employees] in violation of its governing civil service rules."); *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1306 (11th Cir. 2000) ("The ADA does not require accommodations . . . that contravene the seniority rights of other employees under a collective bargaining agreement.").

After this Court's decision in *Terrell*, the Supreme Court created a framework in *Barnett*, 535 U.S. at 406, which guides this analysis. In *Barnett*, the Supreme Court examined whether a job reassignment request trumps an employer's seniority system. The question presented was whether the "ADA requires an employer to assign a disabled employee to a particular position even though another employee is entitled to that position under the employer's 'established seniority system.'" *Id.* at 406. In holding that it did not, the Supreme Court explained that "*ordinarily* the ADA does not require that assignment. Hence, a showing that the assignment would violate the rules of a seniority system warrants summary judgment for the employer –unless there is more." *Id.* Defining "more", the Supreme Court added that where a plaintiff presents evidence of special circumstances that "make 'reasonable' a seniority rule

24

exception," that showing would defeat an employer's motion for summary judgment. *Id.* at 394.

The *Barnett* framework is relevant in cases where a job reassignment (i.e., the requested accommodation) is claimed to violate a disability-neutral rule of the employer. "The first step requires the employee to show that the accommodation is a type that is reasonable in the run of cases. The second step varies. . . ." *Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 361 (3d Cir. 2002). If the accommodation is shown to be reasonable in the run of cases, the burden shifts to the employer to show that granting the accommodation would impose an undue hardship under the particular circumstances of the case. *Id.* "On the other hand, if the accommodation is not shown to be reasonable in the run of cases, the employee can still prevail by showing that special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case." *Id.*; *see also Dunderdale v. United Airlines*, 807 F.3d 849, 855 (7th Cir. 2015) (applying *Barnett* and finding it would be unreasonable to require employer to reassign disabled workers in contravention of its seniority system).

25

This case does not involve a seniority system or a civil service system, but a best-qualified applicant policy.[5] Nevertheless, *Barnett*'s framework is instructive in this context. Requiring reassignment in violation of an employer's best-qualified hiring or transfer policy is not reasonable "in the run of cases." As things generally run, employers operate their businesses for profit, which requires efficiency and good performance. Passing over the best-qualified job applicants in favor of less-qualified ones is not a reasonable way to promote efficiency or good performance. In the case of hospitals, which is this case, the well-being and even the lives of patients can depend on having the best-qualified personnel. Undermining a hospital's best-qualified hiring or transfer policy imposes substantial costs on the hospital and potentially on patients.

In concluding that the ADA only requires an employer allow a disabled person to compete equally with the rest of the world for a vacant position, this Court is cognizant that "the intent of the ADA is that an employer needs only to provide meaningful *equal* employment opportunities," and that "[t]he ADA was

---

[5] Of course, a merit-based selection policy can leave more room for subjectivity, and therefore, can be more susceptible to abuse for discriminatory purposes. But "subjective reasons are not the red-headed stepchildren of proffered . . . explanations for employment decisions" and "can be just as valid as objective reasons." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000). The subjective aspects of a best-qualified applicant policy do not prevent an employer from relying on such a policy when choosing between a disabled applicant and a non-disabled one.

26

never intended to turn nondiscrimination into discrimination" against the non-disabled. *Terrell*, 132 F.3d at 627 (emphasis in original). Consistent with our holding, the Eighth Circuit in *Huber v. Wal-Mart Stores,* 486 F.3d 480, 483 (8th Cir. 2007) also concluded that the ADA "is not an affirmative action statute" and "only requires [the employer] to allow [the disabled employee] to compete for the job, but does not require [the employer] to turn away a superior applicant." *See also Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) (holding that the ADA does not require disabled persons be given priority in hiring or reassignment over those who are not disabled.) (modified on other grounds by *Kapche v. City of San Antonio*, 304 F.3d 493, 494 (5th Cir. 2002)).[6]

For these reasons, this Court concludes that the district court did not err

---

[6] The EEOC argues that three other circuits have held that reassignment must be without competition in violation of a best-qualified hiring policy, citing *EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012), *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999), and *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998). That argument misconstrues those courts' holdings. Instead of actually deciding the issue, the Seventh Circuit remanded it to the district court for decision in the first instance. *See United Airlines, Inc.*, 693 F.3d at 764. The Tenth Circuit in *Smith* was not confronted with an employer's best-qualified applicant policy, or any policy at all; in fact, it noted that "there may be other important employment policies besides protecting rights guaranteed under a collective bargaining agreement that would make it unreasonable to require an employer to reassign a disabled employee to a particular job." *Smith*, 180 F.3d at 1175-76. Finally, while the D.C. Circuit's opinion in *Aka* does contain *dictum* rejecting the view that "a disabled employee is never entitled to any more consideration for a vacant position than an ordinary applicant," the court "decline[d] to decide the precise contours of an employer's reassignment obligations" because it did not need to do so and was "[w]ithout briefing or any record on the issue." *Aka*, 156 F.3d at 1304-05.

27

by failing to instruct the jury that the ADA requires reassignment without competition.   Accordingly, the Court upholds the district court's ruling that the ADA does not  automatically mandate reassignment without competition.[7]

4.  *Was the 30-day period to identify a new position a reasonable amount of time?*

The district court held reasonable as a matter of law the Hospital's 30-day period for Bryk to identify and apply for a vacant position. The EEOC argues that the jury, not the judge, should have determined whether the 30-day period for obtaining a new job was reasonable and that this erroneous instruction led the jury to find that the Hospital acted in good faith. The Hospital argues that the EEOC is factually incorrect on this record, and this Court agrees.

The evidence shows that the Hospital provided Bryk 30 days to find a job, but it told her that the time period would be extended for any position for which Bryk was being considered. Sikes expressly instructed Bryk's supervisors to check with her before terminating Bryk's employment, because Sikes knew Bryk could still have applications outstanding at the time. On the day the

---

[7] In so holding, the Court notes that just because reassignment to a vacant position in violation of an employer's best-qualified hiring policy is not always required as a reasonable accommodation does not mean it never will be.  Consistent with the second step in *Barnett*, a plaintiff can show that special circumstances warrant a finding that reassignment is a required accommodation under the particular facts of her case. *See Barnett*, 535 U.S. at 405-06.  Bryk  did not show special circumstances in this case.

28

Hospital terminated Bryk, Sikes told Bryk that she should continue identifying and applying for positions. The Hospital did not prohibit Bryk from applying to other positions after her termination. Accordingly, the district court did not err in stating that 30 days was reasonable as a matter of law to identify and apply for a new position.

B.    Was the jury's verdict reasonable in view of the evidence?

1. *Does the record support the jury verdict that the Hospital failed to reasonably accommodate Bryk by reassigning her to a vacant position?*

The jury found that the Hospital failed to reasonably accommodate Bryk by not assigning her to one of the Educational Specialist, Care Transition Coordinator, or Home Health Clinician positions. The applicable legal standard requires this Court to evaluate the "evidence in the light most favorable to the [prevailing party] and [draw] all reasonable inferences and credibility choices in favor of the jury's verdict." *Trujillo*, 146 F.3d at 845. This Court will not reweigh the evidence and finds that a rational trier of fact could have evaluated the evidence and found that the Hospital failed to reasonably accommodate Bryk by not placing her in one of the three positions.

The record supports the premise of the jury's verdict that she was

29

qualified. There is no dispute that the Educational Specialist position was vacant. Although the Hospital contends that this position would be a promotion, Bryk earned more in her then-current job than the minimum salary for an Educational Specialist. Based on the salary, the jury could have reasonably concluded that the Educational Specialist position was not a promotion. Moreover, the Hospital does not dispute that its recruiter determined that Bryk met the minimum qualifications for that position. Bryk may not have been the "most qualified" applicant, but the jury could have reasonably concluded that her qualifications were sufficient.

The Hospital contends that the Care Transition Coordinator position was not vacant and posted in error, but there is no dispute that the hiring manager interviewed another applicant for the job, which remained posted until May 2012. The jury could have reasonably concluded that the position was vacant when Bryk applied.

Finally, the jury also could have reasonably concluded that the Home Health Clinician position was vacant because there were postings for three identical positions. The EEOC argued, and the jury could have agreed, that the individual hired for one such position could have been moved to another identical position.

30

Cognizant of the applicable legal standard, it is not appropriate to disturb the jury's verdict that the Hospital failed to reasonably accommodate Bryk by not assigning her to one of the Educational Specialist, Care Transition Coordinator, or Home Health Clinician positions.

### 2. *Should the jury verdict of good faith be vacated?*

The evidence at trial supports the jury's finding that the Hospital acted in good faith. The Hospital presented evidence that it waived the prohibition against applying for an internal job transfer due to Bryk's disciplinary write-up and her recent demotion. The Hospital assigned Sikes to assist Bryk in applying for other positions and gave her 30 days to identify and apply for other jobs. The Hospital's actions in waiving the requirements for internal transfer, providing Bryk with access to Sikes, and 30 days to review the job board and apply for other jobs could lead a reasonable jury to conclude that the Hospital acted in good faith. The Hospital also indicated that it would have extended her employment if she was in the process of seeking reassignment to another position. A rational trier of fact reviewing this record could reasonably conclude that the Hospital acted in good faith although it failed to accommodate Bryk. Accordingly, the Court finds that the jury verdict is reasonable and the district court correctly denied the motion for judgment as a matter of law on this issue.

31

C. <u>Did the district court err in granting the Rule 59(e) Motion to Alter the Judgment?</u>

After the district court entered judgment in favor of the Hospital, the EEOC filed a Rule 59(e) Motion for Alteration of Judgment and Equitable Relief, which the district court granted in part. Rule 59(e) allows courts to alter judgments only where there is "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). The EEOC argued and the district court agreed that the good faith defense applied only to jury-awarded compensatory and punitive damages, but did not absolve the Hospital of all liability. Having found that the defense only applied to preclude money damages, the district court altered the judgment to favor the EEOC and ordered that Bryk have an opportunity for reinstatement.

The record supports the Hospital's position that the parties proceeded in this case as if a good faith finding would absolve it of all ADA liability. The EEOC's own proposed jury instructions and verdict form, read together, treat good faith as a complete defense to liability. The verdict form unequivocally did so by instructing the jurors that if they found that the Hospital had "made good faith efforts to identify and make a reasonable accommodation for Ms. Bryk," they

32

were to end their deliberations – full stop – without deciding whether Bryk's requested accommodation would have imposed an undue hardship on the operation of the Hospital's business. In addition, the jury instructions on good faith and undue hardship both state that a finding of either good faith or undue hardship obviates the need for a verdict on damages. Undue hardship, everyone agrees, is a complete defense to ADA liability. *See* 42 U.S.C. § 12112(b)(5)(A); *Willis v. Conopco*, *Inc.*, 108 F.3d 282,  286 (11th Cir. 1997) (holding undue hardship is a complete defense to ADA liability). Unquestionably, any reading of the jury instructions and verdict form leads to the logical conclusion that the parties believed the jury's finding of good faith equated with a Hospital verdict. Moreover, it was only *after* the district court entered judgment in the Hospital's favor that the EEOC filed its Rule 59(e) motion raising for the first time the statutory issue that good faith only precludes jury-awarded damages under 42 U.S.C. § 1981a(a)(3).

As noted, motions under Rule 59(e) may not be used to raise new legal theories or arguments, much less ones that contradict verdict forms or instructions that the moving party proposed to the district court. *See Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (stating that a district court's failure to apply the correct legal standard on a Rule 59(e) motion constitutes an abuse of discretion);

33

*see also FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) ("Rule 59(e) motions are aimed at *re*consideration, not initial consideration.") (quotation marks omitted) (emphasis in original); *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 77 (D.D.C. 2013) ("A Rule 59(e) motion is not a chance for a party to correct poor strategic choices, nor are such motions to be used by litigants to cry over spilled milk.") (citations and quotation marks omitted). That, however, is exactly how the EEOC used its Rule 59(e) motion in this case: to contradict the position that it invited the district court to incorporate in the jury instructions and verdict form. Under these circumstances, the district court abused its discretion by granting the EEOC's Rule 59(e) motion. It should have denied the motion and left in place the original judgment for the Hospital instead of allowing the EEOC to "correct [its] poor strategic choices." Accordingly, the Court finds the standard for granting a Rule 59(e) motion was not met. *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998); *Arthur*, 500 F.3d at 1343.

Given our holding that the Rule 59(e) standard is not met, we need not examine the Hospital's additional argument that *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) provides the Hospital with a good faith defense to ADA liability. We also need not address the Hospital's undue burden defense and the denial of equitable remedies.

34

Accordingly, the case is reversed in part on these grounds with instructions to enter judgment in favor of the Hospital.[8]

AFFIRMED in part, REVERSED in part, and REMANDED.

---

[8] Having found that the district court erred in altering the judgment in favor of the EEOC, it follows that the district court erred in ordering an opportunity for Bryk's reinstatement.

35