[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13258
_____

D.C. Docket No. 8:15-cv-02792-SCB-JSS

WORTHY MCGUIRE,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 28, 2019)

Before MARCUS, BLACK and WALKER,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Worthy McGuire appeals the district court's order granting summary judgment to United Parcel Service (UPS) on his disability-discrimination claims under the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA), and the district court's order dismissing his FCRA workers' compensation retaliation claim.[1]  After review, we affirm the district court.

## I.  BACKGROUND

McGuire has been employed by UPS since September 1996.  In March 2010, McGuire injured his shoulder and hand while working as a package-car driver.[2]  McGuire sought treatment from Dr. Jorge Rodriguez following that injury, filed a workers' compensation claim, had shoulder surgery, and was out of work for approximately one year.

Dr. Rodriguez cleared McGuire to return to his position as a package-car driver in January 2012.  Approximately one month later, in February 2012, McGuire reinjured his shoulder at work.  Once again, McGuire sought treatment from Dr. Rodriguez, applied for and received workers' compensation benefits, was out of work, and had shoulder surgery.

---

[1] McGuire does not appeal the grant of summary judgment on the race-discrimination claims he asserted before the district court.

[2] The service provider or casual service provider position is UPS's official job title for what this opinion and the parties refer to as a package-car driver.  It is a position with a heavy physical demand level, and it requires, among other things, both possession of a valid driver's license and an ability to drive vehicles with standard transmission safely.

2

In March 2013, Dr. Rodriguez ordered a Functional Capacity Evaluation (FCE) for McGuire and released him for medium to heavy duty work.  Based on the results of that examination, UPS concluded McGuire could not perform the essential functions of a package-car driver, a position that required heavy lifting. Sharon Klinger, Occupational Health Supervisor for UPS, sent McGuire a letter on March 28, 2013, stating he may be eligible for an ADA accommodation based on his March 2013 FCE results.  In April 2013, McGuire notified UPS he was not interested in an ADA accommodation.

McGuire completed a second FCE on May 6, 2013, which demonstrated improvement in McGuire's lifting and carrying ability.  Based on the results of the second examination, Dr. Rodriguez wrote a letter dated May 15, 2013, to McGuire's attorney, stating that McGuire exceeded the strength capabilities required for the package-car driver job.  In the concluding paragraph, however, Rodriguez wrote:

> Based on the information of both functional capacity evaluations he is released to full duty with no restrictions.  Mr. Worthy has informed me that his employer has an inside warehouse position available for him and I think he would be a good candidate for that position based on the information of his FCE's.  He can take anti-inflammatories for minor aches and discomfort, but cannot take narcotics while on the job.

After Dr. Rodriguez released McGuire "to full duty with no restrictions" (but not while taking narcotics), McGuire returned to UPS to report to work.  On

3

multiple occasions between May 17, 2013 and July 12, 2013, UPS told McGuire they had no work for him and refused to let him work.

On June 11, 2013, McGuire requested an ADA accommodation for the first time. UPS responded by sending him medical forms, which he then forwarded to Dr. Rodriguez for completion. Dr. Rodriguez checked "Yes" in response to the question: "Is the employee currently able to perform all of the functions of his/her position?"[3] Beside that answer, he referenced his May 15, 2013 letter to McGuire's attorney, which Dr. Rodriguez attached to the UPS questionnaire. Based on Dr. Rodriguez's response, UPS informed McGuire that he could return to his package-car driver position and therefore denied his ADA accommodation request on July 17, 2013. McGuire was not permitted to return to work after July 17, 2013, and was not provided a reason.

At some point, McGuire's file was forwarded to UPS Risk Management. Risk Management Supervisor Jan Younger reviewed Dr. Rodriguez's May 15 letter[4] and determined she needed to clarify Dr. Rodriguez's opinion "to ensure the safety of Mr. McGuire." She thus wrote a letter to Dr. Rodriguez's office on July 24, 2013, seeking clarification of McGuire's work status. Younger explained that

---

[3] Although the questionnaire generally asked about "his/her position," UPS enclosed the essential job functions for the package-car driver position.

[4] While she referenced the "May 6 letter," Dr. Rodriguez's letter was dated May 15, 2013, and referred to the May 6 FCE performed by therapists at CORA Rehabilitation Clinic.

although Dr. Rodriguez's May 2013 letter referenced an inside position, there was not an inside position open for McGuire. "Therefore, to ensure the safety of Mr. McGuire, so that he is not at risk of re-injury, we need to clarify what position Dr. Rodriguez is releasing him back to work for." The letter then posed a series of yes or no questions:

> Are you releasing him to an Inside Warehouse Position?
> [Answer: *Yes*]
>
> Or, are you releasing Mr. McGuire to the Essential Job Functions of a UPS Service Provider: The [Essential Job Functions] are attached for your review.
> [Answer: *No*]
>
> In your letter, you also noted that Worthy McGuire was taking anti-inflammatories and hydrocodone on the day of the 2[nd] FCE. However, once he [returns to work], he cannot take the narcotics while on the job. Therefore, is it your opinion that Mr. Mc[G]uire can [return to work] without taking any prescription narcotics while at work?
> [Answer: *Yes*]

Dr. Rodriguez then further explained his narcotics answer. "Spoke w[ith] Mr. McGuire and advised him he cannot work while taking narcotics. He understands and feels he can perform the duties of the Inside Warehouse Position without the use of Narcotics."

On July 30, 2013, McGuire again requested an ADA accommodation. In the corresponding paperwork, specifically the August 6, 2013 Authorization for Release of Medical Information form, McGuire represented that he was on

oxycodone, hydrocodone, and naproxen and stated: "The only way I can attempt to be a full time package car driver is taking meds and UPS along with my doctor don't allow taking narcotics while driving."

Dr. Rodriguez again completed the forms sent by UPS. He responded that McGuire was "unable to perform the following duties of a casual service provider while taking narcotics. He cannot ladder climb in/out of vehicle, no foot pedal use, no two hand controls[,] no repetitive bending or squatting, no driving." Rodriguez further explained: "Patient taking narcotics for pain. Unable to operate vehicle while taking narcotics." The form also stated: "This is a permanent life long condition. Restrictions are permanent."

According to the record, McGuire took narcotics for pain from April to July 2013. More specifically, McGuire took hydrocodone, a narcotic, before the May 6, 2013 FCE. And Dr. Rodriguez testified that McGuire requested refills of oxycodone on: April 2, 2013 (quantity of 40, every 6 hours—a 10 day supply); April 23, 2013 (quantity of 40, every 6 hours—a 10 day supply); June 7, 2013 (quantity 40 tablets, every 12 hours—a 20 day supply); and July 11, 2013 (quantity of 40, every 8 hours—a 13 day supply). Dr. Rodriguez had no record of a refill request after July 2013. McGuire acknowledges he took narcotics during the period, although he states he was "weaning off" of them beginning in May 2013, and he did not take any narcotics after his last prescription in July 2013.

6

Dr. Rodriguez testified that narcotics have a half-life, and everyone metabolizes them differently. Dr. Rodriguez did not know how long it would take for a man of McGuire's size to metabolize the narcotics he was taking. But he would always advise someone taking narcotics not to drive.

In August, McGuire and UPS had an ADA "checklist meeting" and discussed possible ADA accommodations for McGuire. At the meeting, McGuire completed an accommodation checklist form and stated his ability to perform the essential functions of the package-car driver position was affected by a shoulder impingement with adhesion and his inability to drive while taking narcotics. He represented he was currently taking oxycodone, hydrocodone, and naproxen. McGuire also stated he could not (1) climb a ladder in or out of a vehicle, (2) use foot pedals, (3) bend or squat repeatedly, or (4) drive. He also represented that the restrictions, including the no-driving restriction, were permanent. McGuire did not believe there were accommodations that would allow him to perform the essential functions of the package-car driver position. He listed several other positions he thought he could perform without accommodation. All of the options McGuire listed were part-time positions, but he stated he was not willing to be reassigned to a part-time position as he was seeking eight continuous hours of work with a break. McGuire also stated he was not willing to consider an accommodation to a non-union position or a position outside the Tampa/Pinellas area.

7

McGuire is a member of the Teamsters Union (Union) which has a Collective Bargaining Agreement (CBA) with UPS.  Consequently, McGuire's employment is governed by the CBA, which addresses providing accommodations under the ADA for disabled employees.  Under the CBA, UPS is required to negotiate with the Union before it can provide a reasonable accommodation to a qualified bargaining-unit employee like McGuire.  The CBA allows for part-time jobs as a reasonable accommodation if the employee is qualified and can perform the essential functions of the job in the event UPS cannot provide a full-time position.

UPS determined McGuire was eligible for an ADA accommodation. UPS told McGuire they did not have full-time work for him and offered him part-time work as an ADA accommodation.  McGuire, UPS, and the Union entered into a full-time to part-time accommodation agreement in November 2013.  Both McGuire and the Union representative, Brian Rothman, signed the full-time to part-time accommodation agreement, but they wrote "under protest" with their signatures.  The Union believed UPS could find eight hours' worth of work for McGuire at that time, but not an eight-hour, full-time position or a 22.3 position.[5] UPS stated there were no full-time positions available that McGuire could bid into based on his seniority.  McGuire took a part-time "small sort" position instead.

---

[5] 22.3 positions are two part-time jobs that have been combined into a full-time position.

8

In July 2014, McGuire requested a note from Dr. Rodriguez releasing him to work an air driver position for UPS. After reviewing the job functions for the position, Dr. Rodriguez felt McGuire would be a good candidate based on the May 2013 FCE and the fact McGuire was no longer on narcotics. At some point after Dr. Rodriguez's July 2014 note, McGuire spent time working as an air driver. But by January 2016, McGuire was working eight hours a day in the car wash by working two part-time positions. He was still not in a full-time or 22.3 position, and he was not receiving the same benefits he would receive if he had a full-time position.

## II.  DISCUSSION

### A.  Disability Discrimination

McGuire asserts the district court erred in granting summary judgment on his disability-discrimination claims and those claims should have gone to the jury because there are triable issues of fact. He asserts that, after he recovered from his second job-related injury and was medically cleared to return to his full-time position as a package-car driver, UPS continued to regard him as disabled and discriminated against him by refusing to allow him to return to his prior position and coercing him to accept, as an accommodation, a part-time position with fewer benefits.

9

We review the "grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (quotations omitted). "Summary judgment is appropriate when the movant demonstrates that there is no genuine issue of material fact and [he] is entitled to judgment as a matter of law." *Id.*

When an ADA claim is based on circumstantial evidence, courts generally apply the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[6] *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). "Under the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination through [his] *prima facie* case." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). "Establishing a *prima facie* case under the ADA requires a plaintiff to show that, at the time of the adverse employment action, [he] had a disability, [he] was a qualified individual, and [he] was subjected to unlawful discrimination because of [his] disability." *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016).

---

[6] Disability-discrimination claims under the FCRA are analyzed under the same framework as ADA claims. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005).

### 1. The Period of May to July 2013

During the period of May to July 2013,[7] McGuire's theory is that UPS regarded him as disabled and would not allow him to return to work even though his second FCE in May 2013 showed he was able to return to his job as a package-car driver. A thorough review of the evidence, however, shows there is no genuine issue of material fact as to whether McGuire was at the time a "qualified individual" for his job as a package-car driver. The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An employee who is unable to perform an essential function of his job even with an accommodation is not a "qualified individual" and not covered under the ADA. *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

The evidence is undisputed that (1) McGuire was weaning off of narcotics from May to July 2013, and (2) McGuire was not allowed to work while on narcotics. Dr. Rodriguez testified that McGuire requested oxycodone refills in April, June, and July 2013, and McGuire admits he was weaning off narcotics

---

[7] To the extent McGuire argues he should have been returned to his package-car driver job after his first FCE in March 2013, the evidence shows he was not qualified to perform the job both because he could not meet the physical demands of the job and because he was using narcotics.

11

during this period.  While Dr. Rodriguez's May 2013 letter to McGuire's lawyer states that McGuire "is released to full duty with no restrictions," it also states that he would be a good candidate for an inside warehouse position.  The letter explains that while McGuire could take anti-inflammatories for minor aches and discomfort, he could not take narcotics while on the job.  When UPS requested further information "clarifying" the May 2013 letter, Dr. Rodriguez explained that he released McGuire to an inside warehouse position, not to a package-car driver position.[8]  Dr. Rodriguez clarified that McGuire felt he could perform the duties of an inside warehouse position without the use of narcotics.

Thus, because it is undisputed McGuire was using narcotics at the relevant time, there is no genuine issue of material fact as to whether McGuire was a "qualified individual" for his desired package-car driver position in May to July 2013.  As he was not a qualified individual, McGuire cannot make out a *prima facie* case of disability discrimination.[9]  *See St. Joseph's Hosp.,* 842 F.3d at 1343.

---

[8]  UPS's denial of McGuire's first request for an ADA accommodation was before it received clarification from Dr. Rodriguez regarding his May 15, 2013 letter.  After receiving clarification, UPS granted McGuire's second ADA accommodation request.  Regardless of the denial of the first ADA request, there is no dispute of material fact as to whether McGuire was on narcotics during the relevant time period.

[9]  Why UPS did not explicitly base its denial of work to McGuire in the May through July time period on McGuire's narcotics use is a mystery.  However, we need delve no further into that question because his narcotics use disqualified him from working at that time.

*2. August 2013 Onward*

As an initial matter, while McGuire brings his ADA case under a "regarded as" disabled theory,[10] McGuire cannot proceed under such a theory on the evidence from August 2013 onward. While McGuire asserts UPS "coerced" him into signing the full-time to part-time accommodation agreement, the fact remains it was McGuire who initiated the ADA accommodation process, and in August 2013, McGuire represented that he was disabled and still on narcotics. Indeed, both Dr. Rodriguez and McGuire represented to UPS that McGuire was unable to return to the package-car driver position in August 2013. The record evidence therefore supports only one conclusion—that McGuire was actually disabled, not regarded as disabled. We will thus analyze whether UPS's accommodation was a reasonable one.

Unless making a reasonable accommodation would pose an undue hardship, the ADA requires an employer to make a reasonable accommodation to an otherwise qualified employee with a disability. *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016). "What constitutes a reasonable accommodation depends on the circumstances, but it may include 'job restructuring, part-time or

---

[10] A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," "or being regarded as having such an impairment." 42 U.S.C. § 12102(1).

13

modified work schedules, [and] reassignment to a vacant position' among other things." *Id.* (quoting 42 U.S.C. § 12111(9)(B)).

Once the accommodation process began, McGuire was not entitled to a job of his choosing. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (explaining a qualified individual with a disability is not entitled to the accommodation of his choice). UPS provided McGuire with a reasonable accommodation of a part-time position, which was negotiated and accepted in writing by both McGuire and the Union, even if the acceptance was "under protest."

A plaintiff protesting an employer's list of available accommodations that, at least in part, is restricted by the employer's or union's seniority system bears the burden of showing special circumstances that would require an exception from the seniority system. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 405-06 (2002). "[T]he plaintiff must explain why, in the particular case, an exception to the employer's seniority policy can constitute a 'reasonable accommodation' even though in the ordinary case it cannot." *Id.* at 406. McGuire has not met this burden.

The evidence shows that when McGuire completed the ADA accommodation process in 2013, there were no full-time positions available on which he could bid based on seniority, and UPS could not create a 22.3 position

14

without violating the seniority rights of other employees. UPS would either have had to create a new position for McGuire or violate the terms of the CBA to give McGuire the position he desired. McGuire does not explain why his circumstances required an exception to UPS's policy. And neither McGuire's conclusory statement that UPS could have found eight hours of work for him, nor similar speculation from his union representative, created a triable issue as to whether UPS's offer of part-time employment was reasonable under the circumstances. Thus, the district court did not err in granting summary judgment.

## B. Workers' Compensation Retaliation

McGuire also contends the district court erred in dismissing his FCRA retaliation claim because he stated a claim under Florida law for workers' compensation retaliation. We review *de novo* the district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6), "accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare

15

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Florida's retaliatory discharge statute provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. In order to state a claim for discriminatory retaliation, a plaintiff must plead facts giving rise to a reasonable inference that: "(1) he engaged in statutorily protected conduct; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision." *See Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006).

At issue here is the third element—whether McGuire sufficiently pled facts giving rise to a reasonable inference that there was a causal connection between his statutorily protected conduct and an adverse employment decision. A plaintiff may plead the causation element by alleging facts that show a statutorily protected activity and an adverse employment action were temporally proximate, but temporal proximity alone is insufficient unless the events are "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Relevant to this issue, the district court dismissed McGuire's retaliation claim in his original complaint because McGuire "fail[ed] to provide dates to support this claim, and

16

without a connection between his application for workers' compensation benefits and the alleged adverse employment actions of no work or less than full-time work, his workers' compensation retaliation claim fails . . . ." The district court granted leave to amend "because it [was] unclear when [McGuire] applied for workers' compensation benefits."

In the Amended Complaint, McGuire alleged that he was first injured on or around March 10, 2010, that he was again injured on or around February 17, 2012, and that he applied for and received workers' compensation benefits, but he did not specify when he applied for or received workers' compensation benefits, or whether he applied for and received such benefits for one of his injuries or both. He further alleged he was cleared to return to full duty on or around May 16, 2013, but was not allowed to return. McGuire alleged he "has been retaliated against on account of filing a valid worker's compensation claim, as [UPS] has treated him as disabled, though he is not, and has not given him full time employment, nor for a period of time, any employment." Further, UPS allegedly "retaliated by attempts to intimidate [McGuire] by demanding repetitive tests and assurances concerning his abilities to return to full time employment, and in so doing has coerced him into accepting part time work instead." In his response to UPS's motion to dismiss the Amended Complaint, McGuire requested the district court consider two additional allegations, which the

17

court considered.  First, McGuire alleged "[a]s a part time employee, [he] does not receive benefits as he would have if he were full time."  Second, he alleged that "[t]he failure of [UPS] to return him to full time status, and the many forms and other documents requested were, and continue to be coercion to cause him to quit working for [UPS]."

McGuire nevertheless again failed to plead facts sufficient to establish the causation element of an FCRA retaliation claim, even after the district court had already dismissed the claim once, explained the pleading deficiencies, and allowed McGuire to constructively amend the complaint when he opposed the motion to dismiss.  McGuire's amended complaint included only conclusory allegations that UPS retaliated against him for filing a workers' compensation claim by treating him as disabled and refusing to allow him to return to full duty.  From these conclusory allegations, one cannot reasonably infer that UPS considered McGuire disabled *because* he had filed a workers' compensation claim, or that McGuire's workers' compensation claim was causally related to UPS's refusal to allow him to return to full-duty work.  *Iqbal*, 556 U.S. at 678.  Most importantly, McGuire again failed to specify the dates that he applied for and received workers' compensation benefits for either of his injuries, making it impossible to determine whether the alleged adverse action and his application for benefits were temporally proximate.

18

While McGuire asserts that a workers' compensation retaliation claim can be continuing, and thus the failure to plead the exact dates of his workers' compensation claim filings was not material, the dates were necessary to determine whether temporal proximity alone could be enough to state a claim in this case, because McGuire pled no other allegations to connect his workers' compensation claims with the alleged adverse employment actions.  Because McGuire relied only on temporal proximity to allege causation, his failure to plead those dates was fatal to his claim.  Because McGuire failed to adequately plead causation, the district court did not err in granting UPS's motion to dismiss McGuire's FCRA workers' compensation retaliation claim.

## III.  CONCLUSION

The district court did not err in granting summary judgment to UPS on McGuire's disability-discrimination claims and did not err in dismissing McGuire's FCRA workers' compensation retaliation claim.

**AFFIRMED.**