916 F.2d 1548
 31 Fed. R. Evid. Serv. 1270
 Oather Jefferson SAMPLES, Barbara Jackson, on behalf of
their own self, and on behalf of their minor child
David Samples, Plaintiffs-Appellants,
v.
CITY OF ATLANTA, J.M. Oglesby, individually and in his
official capacity as a police officer for the City
of Atlanta et al., Defendants-Appellees.
 No. 89-8812.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 13, 1990.
 
 Yehuda Smolar, James I. Seifter, Thomas Allan Rice, Smolar Pelletier Roseman & Barnes, Jeffrey L. Sakas, Harold A. Horne, Jr., Sakas Horne & Froman, Atlanta, Ga., for plaintiffs-appellants.
 Deborah McIver Floyd, Overtis Hicks Brantley, City of Atlanta, Dept. of Law, W. Roy Mays, III, Fortson & Mays, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before CLARK, Circuit Judge, MORGAN and HILL*, Senior Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 Plaintiffs Oather Jefferson Samples and Barbara Jackson filed this action against the City of Atlanta and Officer J.M. Oglesby pursuant to 42 U.S.C. Sec. 1983 alleging that Officer Oglesby used excessive force when he shot and killed their son David on August 1, 1984. In June of 1987, the district court granted the defendants' motion for summary judgment, and on appeal this Court reversed and remanded the case for trial. Samples on Behalf of Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir.1988). On remand, the district court granted the defendants' motion to bifurcate the trial such that the jury would first determine whether the officer violated David's Fourth Amendment rights by using excessive force, and then, if such a violation were found, the jury would determine whether the City of Atlanta was liable for that violation.
 
 
 2
 On September 20, 1988, the jury returned a verdict in favor of the defendants, finding that Officer Oglesby had not used excessive force when he shot and killed David Samples. In this appeal, the plaintiffs argue that the district court erred in instructing the jury and in admitting certain expert testimony and evidence regarding David's and his brother's criminal records. We affirm.
 
 
 3
 The plaintiffs first contend that the district court's instruction on the standard to be used in determining whether a police officer used excessive force misled the jury by suggesting that the jury should consider the officer's subjective motivations in acting as he did. Specifically, the plaintiffs contend that the court's instruction that the jury must find that the officer acted "knowingly" suggested that to find that excessive force was used, the jury had to find that Officer Oglesby had a subjective malicious intent to kill David. The plaintiffs correctly point out that such a finding is not necessary under the Supreme Court's recent decision in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In Graham, the Court held that "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent and motivation." 490 U.S. at ----, 109 S.Ct. at 1872.
 
 
 4
 A trial court "is given wide discretion as to the style and wording" of jury instructions, and on appeal we review the court's instructions only to determine that they "show no tendency to confuse or to mislead the jury with respect to the applicable principles of law." Andres v. Roswell-Windsor Village Apartments, 777 F.2d 670, 673 (11th Cir.1985) (citations omitted). Our review of the entirety of the court's instruction on the standard for determining whether excessive force was used reveals that the instruction properly stated the law and did not tend to confuse the issue by suggesting that the jury must find the officer harbored a subjective malicious intent to kill David Samples.[1] The instruction clarifies the word "knowingly" to mean that the officer acted voluntarily, and did not discharge his weapon by mistake. Taken as a whole, we find the instruction properly directed the jury to consider only whether the officer's actions were objectively reasonable in light of the circumstances as they would have appeared to him at the time.
 
 
 5
 The plaintiffs also argue that the district court erred in admitting testimony from the defendants' "use of force" expert. After establishing the witness's extensive qualifications as an expert in the field of the proper use of force by law enforcement officers, the defense attorney posed a hypothetical based on the facts already in evidence regarding what Officer Oglesby saw as he approached David Samples on the night of the shooting. The attorney then asked for the expert's opinion as to "whether or not it was reasonable for the officer to discharge his firearm when David Samples charged him with a knife." Over the plaintiffs' objection, the expert testified that in his opinion Officer Oglesby acted reasonably. We agree with the plaintiffs that the literal wording of the question posed tends to call for an answer that would invade the province of the jury, which in this case was to decide the reasonableness of the officer's actions. We find, however, that the questions leading up to this testimony, and the manner in which the expert answered the question, properly informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement. After posing the hypothetical, but before asking for the expert's opinion as to the reasonableness of the officer's actions, the defense questioned the expert regarding the industry standards for judging the appropriate use of force. The expert testified that he agreed with the standard as set out by a previous expert witness, which involved a three-pronged inquiry into the subject's ability to harm, his opportunity to harm, and whether someone was in jeopardy of being harmed by the subject at the time the officer used force against the subject. Then, in explaining his answer to the question posed, the expert spoke in terms of this three-pronged inquiry, analyzing David Samples's ability and opportunity to harm Officer Oglesby, and the jeopardy faced by the officer.
 
 
 6
 The plaintiffs also argue that in testifying the expert relied on facts outside the scope of the hypothetical. In analyzing David Samples's ability to harm Officer Oglesby, the expert relied on evidence regarding David's blood alcohol level, evidence of marijuana and toluene in his blood stream, and evidence regarding an earlier encounter David had with a bartender that evening. None of this information was presented in the hypothetical situation about which the expert was asked to give his opinion, and thus this testimony is technically objectionable. Nevertheless, this information was already in evidence. Therefore, while the expert's answer was not precisely responsive to the question posed, it assumed facts already in evidence, and thus did not prejudice a substantial right of the plaintiffs. Noble v. Alabama Dept. of Environmental Management, 872 F.2d 361, 367 (11th Cir.1989) (Admission of evidence not reversible if substantial rights of parties are not harmed by such evidence).
 
 
 7
 The plaintiffs contend that the court also erred in allowing Detective Genson to testify as to whether based upon his investigation of the shooting he thought the shooting was justified. Again, we agree that the question as posed could tend to elicit a response that would invade the province of the jury, but it is clear from the entirety of the testimony presented by Detective Genson that his investigation focused on determining whether the shooting happened as Officer Oglesby said it did, and whether criminal charges could be brought against Officer Oglesby for homicide. Thus, Detective Genson's opinion that the shooting was "justified" meant only that he determined that the physical evidence supported Officer Oglesby's description of what had happened and that no criminal charges should be brought against the officer. We therefore find no reversible error in the admission of any of Detective Genson's testimony.
 
 
 8
 The plaintiffs also argue that the district court committed reversible error in admitting evidence regarding the criminal records of David and his brother Ronnie. Evidence regarding David's juvenile court records was admitted on cross-examination of David's mother, Barbara Jackson. She testified that she was aware of certain times when David had sniffed glue, and the defense presented David's juvenile court records to show that she was aware of several additional instances, thus impeaching her credibility. The plaintiffs argue that under Rule 609 juvenile court records are not admissible in civil trials. We find that Rule 609 does not prohibit the defense's use of juvenile court records in this case. First, Rule 609 speaks of using the witness's criminal convictions to impeach that witness. In this case, the defense offered David's juvenile court records to show that his mother, the witness, had been aware of other times that David had sniffed glue. Secondly, rule 609 does not bar the use of all criminal records in civil proceedings. Green v. Bock Laundry Machine Co., 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Evidence of plaintiff's prior convictions for felonies of burglary and conspiracy to commit burglary admissible to impeach plaintiff's credibility where he sought damages in a products liability action). The plaintiffs also argue that O.C.G.A. Sec. 15-11-38(b) bars the use of juvenile court records in any proceeding in any court. However, the statute states that the records cannot be used "against [the delinquent]" in any proceeding in any court, and in this case the records were not used against David himself. Furthermore, the Georgia courts have allowed juvenile records to be offered into evidence under some circumstances. Houser v. State, 173 Ga.App. 378, 326 S.E.2d 513 (1985) (Allowing juvenile record to be used in criminal trial for rape to show "lustful disposition" and for corroboration purposes).[2]
 
 
 9
 At trial the court also allowed the defense to elicit from Barbara Jackson the fact that David's brother Ronnie was in prison for murder at the time David was shot by Officer Oglesby. The plaintiffs objected and argue on appeal that Ronnie's criminal history is not relevant to a determination of the reasonableness of Officer Oglesby's actions. While in the abstract this is quite true, earlier testimony had revealed that David had called his mother just before the shooting and told her that he was going to try to get himself locked up by a policeman so that he could go see his brother Ronnie. Therefore, the fact that Ronnie was in prison for murder became relevant as it tends to show that David had a motivation to attract attention to himself by throwing a soda bottle at a police car and then pulling a knife on a police officer. The defendants' theory was that because David knew that Ronnie was in prison for murder, David was trying to do something similar so that he would end up in prison with his brother. The plaintiffs argue that while David did say that he wanted to get locked up so he could see Ronnie, he did not say that he was going to kill a policeman as a means of accomplishing that goal. Nevertheless, even if David had no intention of actually stabbing Officer Oglesby, the fact that Ronnie was in jail for murder tends to support a theory that David intended to threaten Officer Oglesby such that he would be charged with a crime of a similarly serious nature. While allowing the defense to pursue their theory that the type of crime Ronnie had committed tended to prove that David intended to commit the same type of crime had the potential to prejudice the jury against the plaintiffs merely because David's brother was a convicted criminal, we find that the district court did not abuse its discretion in concluding that the possible prejudicial impact of Ronnie's conviction was not outweighed by its probative value.
 
 
 10
 For the reasons set forth above, the district court's order entering judgment for the defendants in this action is AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 The court's instruction was as follows:
 The specific constitutional right at issue in this case is the right established by the Fourth Amendment of the United States Constitution to be free of unreasonable searches or seizures.
 One type of unreasonable seizure occurs where a police officer uses excessive physical force in dealing with a citizen. A shooting of a citizen by a police officer either may or may not be an unreasonable seizure under the Fourth Amendment according to the circumstances of the individual case.
 I charge you that in order to prevail on their claim, the plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence.
 First, that Officer Oglesby used excessive force in his confrontation with David Samples.
 Secondly, that he did so knowingly.
 And third, that this was the cause of David Samples' death.
 I charge you that excessive force means unreasonable force. The amount of force which is excessive is not capable of across-the-board definition, but rather requires attention to the facts and circumstances of the particular case.
 Under both Georgia and federal law, an officer is entitled to use force, even deadly force if reasonably necessary to protect his own life or to protect himself from serious bodily harm. However, the use of deadly force is excessive where a reasonable officer under the same circumstances would have concluded that force less than deadly force would suffice to protect himself, and where lesser force, in fact, would have sufficed.
 I charge you that in determining whether or not Officer Oglesby used excessive force, the jury should keep in mind that the issue should not be judged on the basis of 20/20 hindsight, but rather from the perspective of a reasonable officer on the scene taking into consideration the actual circumstances which existed at the time of the incident including time or space limitations, emergency conditions, or other restrictions on perception which might have affected the officer's ability to react in the optimal manner.
 With respect to the requirement that the plaintiffs prove that the deprivation of right; in other words, any excessive force was done knowingly, I charge you that an act is done knowingly if done voluntarily and intentionally and not because of mistake or accident. I charge you that mere error in judgment will not support a cause of action under section 1983.
 SR12-1814-16.
 
 
 [2]
 The plaintiffs argue that the district court erred in allowing the defendants to repeatedly refer to David's glue sniffing habit to malign his character such that the jury would be prejudiced against him. Evidence of David's condition at the time he encountered Officer Oglesby was relevant, however, to determining whether the officer acted reasonably. The physical evidence showed toluene in David's blood, and thus evidence regarding how toluene could have entered his bloodstream was relevant. Because "glue sniffing" causes toluene to enter the bloodstream, evidence regarding David's habit tended to show that the toluene in his blood that day was a result of his sniffing glue, rather than some other cause. The effects that glue sniffing have on behavior also tended to support the officer's description of David's actions