[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16867
_____

D.C. Docket No. 2:11-cv-01722-MHH


VARONICA L. UDEH,

Plaintiff-Appellant,

versus

WINN-DIXIE MONTGOMERY, LLC,
d.b.a. Winn-Dixie,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 4, 2019)

Before MARTIN, JILL PRYOR and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

Plaintiff Varonica Udeh appeals the district court's denial of her motion for a new trial and its entry of final judgment in accordance with a jury verdict in favor of Defendant Winn-Dixie on her pregnancy discrimination claim. Plaintiff argues that the verdict was against the weight of the evidence presented at trial, and that it was tainted by the district court's evidentiary errors and improper jury instructions. After a careful review of the record and with the benefit of oral argument, we affirm.

## BACKGROUND

In January 2009, Plaintiff began working as an in-store coordinator ("ISC") at Defendant's Bessemer grocery store. Plaintiff's duties in the ISC position included helping to coordinate the front end of the store, taking care of office and paperwork, helping cashiers, and refilling ATMs. As an ISC, Plaintiff worked directly under the front-end manager of the store, Amanda Williams. Williams reported to store manager Monica Sledge and co-manager Lorre Prisby.

Plaintiff was about three months pregnant when she started working for Defendant, and she told Williams in April or May of 2009 that she planned to take maternity leave sometime close to her due date in July. Due to unanticipated complications with her pregnancy, Plaintiff subsequently asked Sledge if she could begin her maternity leave on June 11, 2009, and Sledge agreed that she could. Plaintiff completed some leave paperwork at the end of June 2009, but the parties

2

dispute whether she properly submitted the paperwork as required by Defendant's formal policy.  Nevertheless, the parties agree that Plaintiff took a pregnancy-related leave of absence from her job beginning on June 11, 2009 that was intended to last for six weeks.

Plaintiff's baby was born on June 20, 2009.  Sometime during the second week of July 2009, Plaintiff called Sledge to ask about coming back to work early.  The parties dispute what was said during this phone call and in follow-up conversations.  Sledge testified that she told Plaintiff she could immediately return to work as a customer service lead on the 9:00 a.m. to 6:00 p.m. shift.  According to Sledge, Plaintiff asked why she could not work the 6:00 a.m. to 3:00 p.m. shift, as she had done before she took leave, and Sledge responded that the 9:00 a.m. to 6:00 p.m. shift was all she had available at that time.  Sledge testified that she scheduled Plaintiff for three upcoming 9:00 a.m. to 6:00 p.m. shifts in the customer service lead position, but that Plaintiff later called back to say she would not be returning to work and she never showed up to work the scheduled shifts.

Plaintiff agreed that she called Sledge in mid-July 2009 to ask about coming back to work early, but she disputed certain details about her conversation with Sledge.  Plaintiff testified that Sledge told her the ISC position on the 6:00 a.m. to 3:00 p.m. shift was no longer available, but that Plaintiff could work as a cashier on a different shift.  Plaintiff explained that she agreed to the change, although she

3

understood her pay would be reduced in the cashier position, because she needed

the money.  Plaintiff stated further that she told Sledge she needed to get approval

from her doctor before she could return to work, and Sledge said she would not

add Plaintiff to the schedule until Plaintiff had checked with her doctor.  Plaintiff

testified that, after consulting with her doctor, she called Sledge back to tell her she

could not return to work until after her post-partum check-up, which was scheduled

for August 2009.  According to Plaintiff, Sledge responded that a position would

be waiting for Plaintiff after her post-partum check-up.

Plaintiff testified that Prisby called her on July 13, 2009, a few days after her

conversation with Sledge, and told her that her employment with Defendant had

been terminated.[1]  According to Plaintiff, Prisby first explained that Plaintiff had

been terminated because her leave paperwork was not on file.  Prisby then

suggested that Plaintiff had been automatically terminated by Defendant's

computer system because she had been away from work for more than six weeks.

When Plaintiff told Prisby she had not been out for six weeks, Prisby responded

that she could not provide any additional information, other than that Plaintiff had

been terminated and she would have to reapply if she wanted to work for

Defendant again.  Plaintiff testified that she was surprised by Prisby's phone call,

given Sledge's assurance just a few days prior that Plaintiff could return to work as

---

[1]  Prisby denied calling or ever talking to Plaintiff about her maternity leave or termination.

4

soon as she was cleared by her doctor.  Nevertheless, Plaintiff admitted that she did not contact Sledge or call Defendant's 1-800 "W-dial" employee assistance number to discuss the matter.

Plaintiff filed a claim for unemployment benefits on July 19, 2009, listing her last day of work as June 11, 2009.  She collected unemployment benefits for nearly eighteen months until she returned to full-time employment (for an employer other than Defendant) in January 2011.

Plaintiff's termination was finalized by Defendant's corporate office on July 22, 2009, six weeks and one day after her maternity leave began on June 11, 2009. The reason given for Plaintiff's termination was job abandonment, and Sledge confirmed in her trial testimony that Plaintiff was terminated because she told Sledge she had decided not to go back to work and she did not show up for the shifts Sledge had scheduled her to work in July 2009.  Contrary to Sledge's explanation, Plaintiff testified that she believed she was terminated because of her pregnancy.

Plaintiff filed this lawsuit in May 2011, asserting a claim for pregnancy discrimination in violation of Title VII.[2]  Defendant filed a motion for summary judgment on the claim, which the district court denied.  The claim was then tried

---

[2]  Plaintiff also asserted a claim for negligence, but that claim was dismissed on summary judgment and is not at issue in this appeal.

5

by a jury, which returned a verdict for Defendant after a four-day trial. At the conclusion of the trial, the jury answered "No" to the first question on the verdict form, which asked: "Do you find from a preponderance of the evidence . . . [t]hat [Defendant] discharged [Plaintiff] and that this discharge constitutes an adverse employment action?" That response concluded the jury's deliberations.

Plaintiff filed a motion for a new trial, which the district court denied. Plaintiff then appealed, arguing that the district court's entry of judgment in favor of Defendant pursuant to the jury verdict should be reversed because the verdict was contrary to the great weight of the evidence. Plaintiff also argued she was entitled to a new trial because the district court made several erroneous evidentiary rulings and failed to properly instruct the jury as to the legal meaning of the term "adverse employment action."

## DISCUSSION

### I.    Standards of Review

There are multiple standards of review that apply to this appeal. We review the sufficiency of the evidence to support a jury verdict *de novo*. *See E.E.O.C. v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016). To conduct our review, we "view the evidence in the light most favorable to the prevailing party and draw all reasonable inferences and credibility choices in favor of the jury's verdict." *Id.* (internal quotation marks omitted and alterations adopted). We then

6

ask whether "any rational trier of fact could have ruled" as the jury did in light of the evidence presented. *Id.* (internal quotation marks omitted).

We review the district court's evidentiary rulings for abuse of discretion. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). An abuse of discretion occurs when the court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Id.* (internal quotation marks omitted). But "even a clearly erroneous evidentiary ruling will be affirmed if harmless." *Id.* An error is harmless if we can say "with fair assurance . . . that the judgment was not substantially swayed" by it. *Id.* (internal quotation marks omitted).

The abuse of discretion standard likewise applies to our review of the district court's jury instructions. *See Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012). We give the district court "wide discretion as to the style and wording" used in jury instructions. *Id.* (internal quotation marks omitted). An abuse of discretion occurs if the court's instructions "misstate the law or confuse the jury" such that we "are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009) (internal quotation marks omitted).

7

## II.    There is ample evidence to support the jury's verdict.

Plaintiff's primary argument on appeal is that the jury's verdict in favor of Defendant on her pregnancy discrimination claim is contrary to the weight of the evidence presented at trial. To prevail on her pregnancy discrimination claim, Plaintiff had to prove that Defendant took an adverse employment action against her because of her pregnancy. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254–55 (11th Cir. 2012) ("As amended by the Pregnancy Discrimination Act, Title VII prohibits employers from discriminating against employees because of pregnancy."); *Holland v. Gee*, 677 F.3d 1047, 1054–55 (11th Cir. 2012) ("The analysis for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." (internal quotation marks omitted)). The only adverse action alleged by Plaintiff in this case was her termination in July 2009. As to this action, Plaintiff claimed she was terminated because of her pregnancy, while Defendant argued that Plaintiff was terminated because she abandoned her job.

In an effort to prove her case to the jury, Plaintiff presented evidence that: (1) Defendant did not, in Plaintiff's case, follow its usual practice of calling a no-show employee before terminating the employee for job abandonment, (2) the timing of Plaintiff's termination, which became official in Defendant's system on July 22, 2009, was suspicious because it occurred exactly six weeks and one day

after Plaintiff began her maternity leave on June 11, 2009, and (3) Plaintiff believed she was terminated because of her pregnancy. This evidence was intended to show that Plaintiff had not abandoned her job as Defendant claimed, and that her termination was causally related to her pregnancy or her pregnancy-related leave. Defendant countered with evidence supporting the job abandonment explanation, including Sledge's testimony about her conversations with Plaintiff in July 2009 and records showing that Plaintiff did not resume full employment—instead collecting unemployment benefits—until January 2011, nearly eighteen months after her last day working for Defendant. Defendant also relied on Plaintiff's testimony that her supervisors did not question or react negatively to her request to take maternity leave and her admission that she did not contact Sledge or call the W-dial hotline after being notified of her termination.

Evidently the jury credited the evidence presented by Defendant indicating that Plaintiff abandoned her job, because it answered "No" when asked whether Defendant "discharged" Plaintiff and whether the discharge "constitutes an adverse employment action." Nevertheless, Plaintiff argues that the only conclusion a reasonable jury could have drawn from the evidence presented at trial is that she was terminated because of her pregnancy in violation of Title VII. In support of that argument, Plaintiff cites facts that arguably impugn Sledge's credibility and cast doubt on her testimony as to the reason for Plaintiff's termination, as well as

9

other evidence she claims to show that pregnancy discrimination was the real reason for the termination. For the reasons discussed below, we are unpersuaded by Plaintiff's argument, which essentially asks the Court to reach a different result than the jury by substituting its own inferences and credibility choices for those of the jury. *See St. Joseph's Hosp.*, 842 F.3d at 1343 ("Courts are not free to . . . set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." (internal quotation marks omitted)).

### A.    Sledge's Credibility

As discussed, Sledge explained at trial that Plaintiff's employment was terminated because she abandoned her job. Specifically, Sledge testified that Plaintiff told Sledge in July 2009 that she had decided not to return to work and then failed to show up for several assigned shifts. Plaintiff argues that the jury should not have believed Sledge because Sledge could not remember certain details about the conversations she had with Plaintiff in July 2009, and because Sledge's version of the facts was internally inconsistent and conflicted with other evidence in the record. Neither of these arguments is persuasive.

In support of the first point, Plaintiff points out that Sledge could not recall the dates she had scheduled Plaintiff to work in July 2009 or the date Plaintiff had called back to tell Sledge she would not be returning to work. Given the time that

10

passed between Plaintiff's termination in July 2009 and the trial of Plaintiff's pregnancy discrimination claim in September 2015, it was the jury's prerogative to credit Sledge's testimony despite her failure to remember these details. The jury might have reasonably concluded that Sledge was telling the truth and accurately recalling the general substance of her conversations with Plaintiff in July 2009—conversations during which Plaintiff allegedly first stated her intention to return to work early but later advised Sledge that she had decided not to return to work at all—even though Sledge could not remember the exact dates she had scheduled Plaintiff to work or the date of her follow-up conversation with Plaintiff.

As to the alleged inconsistencies in Sledge's testimony, Plaintiff claims Sledge's trial testimony, during which Sledge affirmatively stated that Plaintiff did not mention in July 2009 that her doctor had not cleared her to work, conflicted with Sledge's deposition testimony, during which Sledge said she could not remember whether Plaintiff had raised the issue about her doctor in July 2009. Although Sledge elaborated at trial on the basic facts she provided in her deposition, her trial testimony did not contradict her deposition testimony. In addition, Sledge explained at trial that after her deposition she had tried to remember every detail about Plaintiff's termination so that she could give accurate testimony at trial that was fair to both Plaintiff and Defendant. The jury was within its discretion to believe that explanation.

11

Plaintiff also contends that Sledge's trial testimony that Plaintiff had not properly submitted her leave paperwork conflicted with a sworn statement Sledge signed in March 2010, in which Sledge admitted on behalf of Defendant that Plaintiff took maternity leave in June 2009. Again, there was no real inconsistency between Sledge's trial testimony and her sworn statement. Sledge acknowledged at trial that she had signed the March 2010 statement admitting that Plaintiff took maternity leave in June 2009. But Sledge explained at trial that, in her opinion, Plaintiff's leave paperwork was not filed properly or submitted in accordance with Defendant's formal procedures. It was not inconsistent for Sledge to admit that Plaintiff took maternity leave and at the same time to assert that she failed to properly submit the paperwork as required to finalize such leave.

Finally, Plaintiff notes that there was no independent evidence to corroborate Sledge's testimony that she scheduled Plaintiff for several shifts in July 2009, which Plaintiff did not show up to work, or her testimony that Plaintiff told Sledge in July 2009 she had decided not to return to work. The jury was entitled to believe Sledge's testimony on these points without corroborating evidence. Regarding the scheduling issue, Sledge testified that she had to manually add (or "pencil in") Plaintiff's name because the schedule had already been finalized by the time Plaintiff called to inquire about returning to work. The jury might have reasonably concluded that Sledge testified truthfully that she had scheduled

Plaintiff for several shifts in July 2009, but that Defendant could not produce corroborating documentary evidence because Sledge had penciled Plaintiff's name onto a paper copy of the finalized schedule that was subsequently discarded. As to Sledge's testimony that Plaintiff told Sledge in July 2009 she had decided not to return to work, the conflicting testimony on this issue raises a credibility issue for the jury to resolve despite the lack of corroborating evidence. *See United States v. Clay*, 832 F.3d 1259, 1294 (11th Cir. 2016) ("The jury has exclusive province over the credibility of witnesses, and we may not revisit the question.").

Furthermore, there is evidence in the record to corroborate Sledge's general testimony that Plaintiff was terminated for job abandonment. Prisby testified, consistent with Sledge's testimony, that she saw Plaintiff's name on the schedule in mid-July 2009 and that Plaintiff did not show up to work her scheduled shifts during that time. Moreover, Plaintiff admitted at trial that she was permitted to take maternity leave and that no one discouraged her from doing so. The jury might have inferred from Defendant's willingness to let Plaintiff take maternity leave that it had no pregnancy-based animus against her, and that Defendant must have thus terminated Plaintiff for job abandonment, as Sledge claimed. The jury might also have concluded that Plaintiff's decision to collect unemployment benefits instead of resuming full-time employment for eighteen months after she took maternity leave in June 2009 was consistent with a decision by Plaintiff,

13

allegedly communicated to Sledge in July 2009, that she did not want to go back to work.

## B.     Other Evidence of Discrimination

In addition to impugning Sledge's credibility, Plaintiff points to other evidence in the record that she claims is indicative of pregnancy discrimination, including Defendant's failure to call Plaintiff before terminating her for job abandonment, the suspicious timing of Plaintiff's termination, and Plaintiff's own testimony about other facts surrounding her failure to return to work.  This evidence raises a genuine issue of fact as to the reason for Plaintiff's termination, which is why the district court denied Defendant's motion for summary judgment on Plaintiff's pregnancy discrimination claim.  But it does not warrant a decision by this Court to override the jury's resolution of that issue in favor of Defendant. *See Smith v. LePage*, 834 F.3d 1285, 1291 (11th Cir. 2016) ("A genuine factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party." (internal quotation marks omitted and alterations adopted)).

Addressing the first point, Prisby testified that when an employee is absent from a scheduled work day and has not called to report the absence, the store manager typically calls to ask if the employee is coming in to work.  Sledge testified that she did not call Plaintiff when she did not show up to work in July

14

2009 because she was busy making sure the store was properly staffed and because Plaintiff had already told Sledge she was not coming back to work.  The jury was within its discretion to believe Sledge's testimony as to why Defendant's general practice of calling a no-show employee was not followed in Plaintiff's case.  *See Clay*, 832 F.3d at 1294.

As to the timing of her termination, Plaintiff notes that, according to Defendant's records, she was not officially terminated until July 22, 2009, six weeks and one day after she began her maternity leave on June 11, 2009. According to Plaintiff, this indicates that her termination must have been related to her pregnancy or maternity leave.  But that is not necessarily the case.  Plaintiff's own testimony suggests that Defendant had decided to terminate Plaintiff at least ten days earlier, when Prisby allegedly called Plaintiff on July 13, 2009 to advise her about the termination.  Assuming Prisby made this phone call as Plaintiff claims, she did so only a few days after Plaintiff allegedly told Sledge she had decided not to return to work.  The jury might have reasonably concluded that the timing of the decision to terminate Plaintiff supported Sledge's job abandonment explanation, and that it was insignificant that it took ten additional days for the termination to become official per Defendant's corporate records.

Finally, Plaintiff relies on her trial testimony denying that she told Sledge she was not coming back to work and stating that Sledge told Plaintiff she would

15

not add Plaintiff to the schedule until Plaintiff was cleared by her doctor to return to work.  Plaintiff claims her testimony is supported by Prisby's alleged statement during the July 13, 2009 phone call that Plaintiff's "maternity leave paperwork wasn't on file" and the computer had thus "kicked [Plaintiff] out" after six weeks of inactivity and other corroborating evidence in the record.  But Prisby denied calling Plaintiff on July 13, 2009, and the jury was entitled to believe Prisby's testimony that the conversation Plaintiff claims to have had with Prisby never occurred.  As to the other corroborating evidence, Plaintiff cites:  (1) a doctor's certificate she provided to the Alabama Department of Industrial Relations stating that Plaintiff would not be able to perform the duties of her job until August 5, 2009, (2) the fact that Plaintiff initiated the call to Sledge to try to return to work as soon as possible because she needed money, and (3) her good attendance and performance record.  This evidence might have persuaded—but it did not compel—the jury to credit Plaintiff's account of the conversation she had with Sledge in July 2009.

### C.    Conclusion

In short, there is substantial evidence to support the jury's conclusion that Plaintiff was not terminated because of her pregnancy but instead because she abandoned her job, most notably, Sledge's testimony that Plaintiff was terminated for job abandonment, Plaintiff's testimony that none of her supervisors

16

discouraged her from taking leave or reacted negatively to her request for leave, and other evidence showing that Plaintiff stayed out of the workforce for eighteen months after filing a claim for unemployment compensation, which the jury might have viewed as confirmation of her desire not to work.  Given this evidence, there is no basis for setting aside the jury's verdict.  *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009) ("If the jury's verdict is supported by the evidence, then it is immaterial that we or the district judge would have arrived at the same verdict because it is not our place to substitute our judgment for that of the jury.").

## III.    There is no other basis for granting a new trial.

Plaintiff also argues she is entitled to a new trial as a result of the district court's erroneous evidentiary rulings and its improper jury instruction (or lack of instruction) concerning the meaning of the term "adverse employment action." Neither argument has merit.

### A.    The district court's evidentiary rulings did not constitute an abuse of discretion.

#### 1.    Sledge's Testimony

Testifying as Defendant's corporate representative at her deposition and at trial, Sledge admitted that Plaintiff took maternity leave in June 2009.  However, Sledge added during her trial testimony that she personally did not believe Plaintiff had properly completed her maternity leave paperwork.  Plaintiff argues it was

17

erroneous and prejudicial for the district court to allow Sledge to testify to this inconsistent, "backdoor . . . alternative" reason for Plaintiff's termination.

There are several grounds upon which to reject this argument. First, and as discussed above, there was no real inconsistency in Sledge's testimony as to whether Plaintiff took maternity leave. Sledge stated in her deposition and at trial that Plaintiff left work in June 2009 to have a baby. In other words, Sledge acknowledged—both in her deposition and at trial—that Plaintiff took maternity leave. That acknowledgement does not conflict with Sledge's assertion at trial that Plaintiff did not properly complete the paperwork to have her maternity leave approved in accordance with Defendant's formal policy.

Moreover, and even assuming Sledge's trial testimony was internally inconsistent or inconsistent with her deposition testimony, the district court did not abuse its discretion by admitting it into evidence. "A jury is ordinarily entitled to believe all, any part of, or none of a witness'[s] testimony." *United States v. Sharif*, 893 F.2d 1212, 1214 (11th Cir. 1990) (internal quotation marks omitted). *See also Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987) (noting that the jury "was free to believe or disbelieve portions of testimony"). To the extent there were discrepancies between Sledge's trial and deposition testimony, or even between different parts of Sledge's trial testimony, it was the jury's task to decide which parts of the testimony to credit. The district

18

court did not commit any error by allowing the jury to perform its intended function in that regard.  *See Rosenfield*, 827 F.2d at 1498 (reversing the trial court's order granting a new trial and explaining that "the jury was called upon to make credibility determinations and to weigh the evidence").

      2.      <u>Plaintiff's motion in limine regarding her leave paperwork</u>

Plaintiff also argues that the district court erred by denying her motion in limine seeking to exclude evidence regarding Plaintiff's failure to properly request maternity leave.  According to Plaintiff, evidence about whether she properly submitted her leave paperwork was irrelevant because Defendant admitted she was granted maternity leave and asserted that she was terminated only because she voluntarily failed to return to work.  Thus, Plaintiff contends, the district court should have granted her motion in limine and excluded any evidence regarding whether Plaintiff properly requested maternity leave.

This argument is waived.  After the district court ruled on Plaintiff's motion in limine, Plaintiff's counsel raised the issue of Plaintiff's purported compliance with Defendant's leave procedures in his opening argument, and then he proceeded to question Plaintiff and Sledge extensively about it during Plaintiff's case in chief. Defendant's counsel responded by attempting to rebut Plaintiff's evidence on this issue, as he was entitled to do given the testimony elicited by Plaintiff's counsel. Because any error in the district court's admission of this evidence was thus invited

by Plaintiff, it cannot form the basis of her appeal. *See Birmingham Steel Corp v. Tenn. Valley Auth.*, 353 F.3d 1331, 1340 n.5 (11th Cir. 2003) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (internal quotation marks omitted)).

In addition, Plaintiff cannot show that any alleged error by the district court with respect to the motion in limine affected her substantial rights. *See Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007) ("[A]n erroneous evidentiary ruling is a basis for reversal only if the complaining party's substantial rights were affected."). As its rationale for Plaintiff's termination, Defendant consistently asserted during the trial that Plaintiff abandoned her job when she told Sledge she had decided not to return to work and then did not show up to work several scheduled shifts in July 2009. The jury accepted that rationale, answering "No" when asked whether Plaintiff was discharged and whether the discharge constituted an adverse employment action. There is no indication that the evidence about Plaintiff's failure to properly complete her leave paperwork had any bearing on the jury's finding. Thus, even if Plaintiff were permitted to challenge the district court's denial of her motion in limine as erroneous, the error would not provide a ground for setting aside the jury's verdict and granting a new trial. *See id.* at 1352 ("To satisfy this standard, [the plaintiff] bears the burden of proving

that the error probably had a substantial influence on the jury's verdict." (internal quotation marks omitted)).

### 3.    Evidence of witness tampering

Plaintiff claims that her counsel became aware after the exchange of witness lists that Defendant's attorney had visited Plaintiff's co-worker Rachel Weston and secured an affidavit detrimental to Plaintiff's case by telling Weston she would not have to testify at trial if she provided an affidavit. During the pretrial conference, Plaintiff's counsel told the district court he believed Defendant's counsel had committed an ethical violation by advising Weston that she could avoid appearing at trial by providing an affidavit. Defendant's attorney denied making the statement to Weston, and the court advised the parties that it would investigate the matter further if Defendant asked to use the affidavit at trial.

As it turns out, Defendant did not rely on Weston's affidavit at trial. Both parties subpoenaed Weston, and she appeared at trial to testify. Because Defendant did not ask to use the affidavit at the center of Plaintiff's witness-tampering charge, it was not an abuse of discretion for the court to fail to pursue an investigation of that allegation.

21

**B.     The district court's jury instructions were not erroneous or prejudicial.**

Finally, Plaintiff argues that the district court erred because it did not instruct the jury as to the meaning of the term "adverse employment action."  The district court instructed the jury as follows:

> To succeed on her claim against [Defendant], [Plaintiff] must prove each of the following facts by a preponderance of the evidence: [Defendant] discharged [Plaintiff] and the discharge constitutes an adverse employment decision and [Plaintiff's] pregnancy was a motivating factor that prompted [Defendant] to discharge her.

Consistent with this instruction, the first question on the verdict form asked the jury whether it found by a preponderance of the evidence that Defendant discharged Plaintiff and that this discharge "constitutes an adverse employment action."  Plaintiff contends that the district court should have further explained that an adverse employment decision "must show a serious and material change in terms, conditions, or privileges of employment" and also that an adverse employment action "should be evaluated cumulatively."[3]

Federal Rule of Civil Procedure 51 provides that a party may assign as error "a failure to give an instruction, if that party properly requested it and . . . also

---

[3]  In addition to her argument about the instructions, Plaintiff suggested during oral argument that the verdict form was confusing because it was undisputed Plaintiff was terminated and a termination necessarily constitutes an adverse action.  Plaintiff did not object to the verdict form at trial.  But in any event, Plaintiff waived this argument by failing to raise it in her opening brief.  *See Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1283 n.2 (11th Cir. 2001) ("Arguments not raised in an appellant's initial brief are deemed waived.").

22

properly objected." Fed. R. Civ. P. 51(d)(1)(B). Consistent with Rule 51, this Court requires a party to object to a jury instruction (or more accurately here, the failure to give an instruction) prior to jury deliberations in order to preserve the issue on appeal. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) ("We interpret Rule 51 strictly, and require a party to object to a jury instruction or jury verdict form *prior* to jury deliberations in order to preserve the issue on appeal."). Plaintiff never requested that the district court give an instruction defining "adverse employment action" for the jury, nor objected to the court's failure to do so.[4]

Moreover, the instruction given by the district court does not provide a basis for granting a new trial. On appeal, we review the district court's jury instructions only to ensure that they "show no tendency to confuse or to mislead the jury with respect to the applicable principles of law." *Samples v. City of Atlanta*, 916 F.2d 1548, 1550 (11th Cir. 1990) (internal quotation marks omitted). The jury was not likely to be confused or misled by the district court's failure to elaborate on the meaning of the term "adverse employment action" because the only adverse action alleged in this case was Plaintiff's termination, and the argument at trial focused on whether Plaintiff was terminated because of her pregnancy or pregnancy-related leave, in which case Defendant discharged Plaintiff and the discharge necessarily

---

[4] Defendant requested a definition of "adverse employment action" but Plaintiff did not.

would have been an adverse action, or whether Plaintiff was terminated because she voluntarily abandoned her job, in which case Defendant did not discharge Plaintiff or take any other adverse action against her.  Evidently the jury concluded that Plaintiff was not discharged but rather abandoned her job, and that she consequently did not suffer an adverse action.  That conclusion would not have been impacted by the additional explanation that an adverse action must show a "serious and material change" in the terms of employment and must be evaluated "cumulatively."

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Plaintiff's motion for a new trial and its entry of final judgment in favor of Defendant on Plaintiff's pregnancy discrimination claim in accordance with the jury's verdict.

24